UNITED STATES of America, Appellee,

v.

Billy Paul BULLOCK, Wayne Lester
Bullock and Allen Glen Bullock,
Appellants.

No. 78–1250.

United States Court of Appeals,
Eighth Circuit.

Submitted July 20, 1978.

Decided July 26, 1978.

Robert S. Gunter, Southern, Gunter &
Matthews, Little Rock, Ark., on brief for
appellants.

W. H. Dillahunty, U. S. Atty. and Sandra W. Cherry, Asst. U. S. Atty., Little Rock, Ark., on brief for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

The defendants were convicted on an information charging the unlawful taking of migratory birds over a baited area, in violation of 16 U.S.C. § 703 and 50 C.F.R. § 20.21 (1976). They take this appeal, alleging (1) that the evidence was insufficient and that the court erred in denying their motion for new trial; (2) that they were entitled to a trial by jury; and (3) that the conviction subjected them to double jeopardy.

I. Sufficiency of Evidence and New Trial Motion.

Title 16, section 703, of the United States Code provides:

Unless and except as permitted by regulations * * *, it shall be unlawful at any time, by any means or in any manner, to pursue, hunt * * * any migratory bird, * * * [protected under certain conventions between the United States and foreign nations].

50 C.F.R. § 20.21 (1976) provides in part as follows:

Migratory birds on which open seasons are prescribed in this part may be taken by any method except those prohibited in this section. No person shall take migratory game birds:

&ast; &ast; &ast; &ast; &ast; &ast;

(i) By the aid of baiting, or on or over any baited area. As used in this paragraph, "baiting" shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and "baited area" means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered; and such area shall remain a baited area for 10 days following complete removal of all such corn, wheat or other grain, salt, or other feed.

An offense under 16 U.S.C. § 703 is made punishable by 16 U.S.C. § 707, which provides, *inter alia,* that the crime is a misdemeanor and that the offender is subject to a maximum prison term of six months and a fine of $500.

To make out a conviction under the above provisions, the government must show that the defendants were in pursuit of a protected species [1] from a baited area. The evidence is undisputed that on December 17, 1977, wildlife officers discovered the defendants hunting wild duck from a duck blind area maintained by defendant Billy Paul Bullock. The officers found the defendants (and others) dressed in hunting garb; guns that were checked were found "plugged." The only significant evidentiary dispute is thus whether the area was "baited."

The government's evidence disclosed that on December 14, 1977, agents witnessed an airplane scattering debris through the area in question. After the plane left, samples of the debris were found among the duck decoys. The samples were shown to consist of rice and milo. The defendants denied the area was baited. They suggested that the rice and milo found by the agents amounted to natural vegetation in the area. They also suggested that fluctuating water levels would wash these grains into the duck hunting area.

1. As noted above, 16 U.S.C. § 703 protects only certain species—those enumerated in specific treaties between the United States and other nations. Encompassed by the statute is the Convention between the United States and Great Britain for the protection of migratory birds, concluded August 16, 1916. 39 Stat. 1702. The Convention protects, *inter alia,* "[a]natidae or waterfowl, including braut, wild ducks, geese, and swans."

▮ We are satisfied from our review of the record, taking the view most favorable to the government, that there is substantial evidence to support the district court's finding of guilt. *United States v. Marley,* 549 F.2d 561 (8th Cir. 1977); *United States v. Rischard,* 471 F.2d 105 (8th Cir. 1973). Further, there is no merit to defendants' contention that the trial court abused its discretion in denying the motion for new trial. The trial court could properly conclude that defendants' contention that "new evidence * * * that tended to prove inconsistencies" in testimony would be unlikely to alter the judgment of guilt. Furthermore, with "due diligence" the additional photographic evidence could have been presented at trial. *United States v. Ward,* 544 F.2d 975, 977 (8th Cir. 1976); *United States v. McColgin,* 535 F.2d 471, 476 (8th Cir. 1976).

## II. Jury Trial.

▮ The defendants' contention that they were entitled to a jury trial on this petty offense is without merit. *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *United States v. Jarman,* 491 F.2d 764 (4th Cir. 1974).

## III. Double Jeopardy.

▮ Defendants' final contention is that their convictions violate the protection against twice being put in jeopardy for the same offense. This contention arises out of the fact that the federal government initiated action against them by sending a notice of violation which indicated they could forfeit a bond of $100 in lieu of standing trial. Defendants responded by sending in checks for $100. Several days thereafter an information was filed superseding the notice of violation, which was dismissed. Defendants' checks were returned uncashed.[2]

▮ In a nonjury proceeding, as a general rule, jeopardy attaches when the court begins hearing evidence. *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Traditionally, the proc-

ess of arraignment and pleading has not been viewed as amounting to jeopardy. *Collins v. Loisel,* 262 U.S. 426, 429, 43 S.Ct. 618, 67 L.Ed. 1062 (1923). Of course, jeopardy would attach when a plea of guilty is accepted. *See United States v. Williams,* 534 F.2d 119, 120 (8th Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Young,* 503 F.2d 1072, 1074 n.5 (3d Cir. 1974); *United States v. Jerry,* 487 F.2d 600, 606 (3d Cir. 1973).

It is submitted that the pretrial events in this case, while arguably reflecting prosecutorial indecision, did not amount to jeopardy. *See DeMarrias v. United States,* 487 F.2d 19 (8th Cir. 1973), *cert. denied,* 415 U.S. 980, 94 S.Ct. 1570, 39 L.Ed.2d 877 (1974).

Affirmed.

---

2. The parties have not included in the record any documents relating to these events. The rather vague account presented here is drawn from the briefs.